**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 7, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.C., D.O., and R.H.**

**No. 21-0014** (Mercer County 19-JA-79-MW, 19-JA-80- MW, and 19-JA-81-MW)

**MEMORANDUM DECISION**

Petitioner Mother M.C., by counsel Thomas M. Janutolo, Jr., appeals the Circuit Court of Mercer County's October 26, 2020, order terminating her parental rights to B.C., D.O., and R.H..[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Monica Holliday, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative, such as terminating her custodial rights only.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition against petitioner and R.H. III, petitioner's live-in boyfriend, based upon R.H. III's domestic violence against petitioner and her children, B.C. and D.O. Specifically, the DHHR alleged that in May of 2019, R.H. III struck and beat B.C. and D.O. with belts and with his hand resulting in busted lips, bleeding ears, and other injuries to the children. The DHHR also alleged that the children reported witnessing domestic violence between petitioner and R.H. III, including an instance where R.H. III held a knife to petitioner's throat. The respective Child Protective Services ("CPS") and law enforcement agencies of West Virginia and Virginia had collaborated since May of 2019 to protect petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and B.C. and D.O. from R.H. III by implementing a domestic violence protective order in Virginia and implementing in-home safety services and a temporary protection plan in West Virginia. However, petitioner continued to make false statements about the domestic abuse and lied about her intentions to move into a domestic violence shelter. In July of 2019, petitioner gave birth to R.H., her only child with R.H. III. Petitioner then violated the domestic violence protective order and the DHHR's restrictions by moving back in with R.H. III with newborn R.H. Petitioner left D.O. and B.C. at the maternal grandfather's residence in Bluefield, West Virginia. The DHHR filed a petition for abuse and neglect against petitioner and R.H. III in West Virginia as the children were living in Bluefield, West Virginia.[2] After the DHHR made several offers to take petitioner and her three children to the domestic violence shelter and she refused, the DHHR sought emergency ratification of the children's removal due to petitioner's inability to protect the children. Petitioner and R.H.'s paternal grandmother actively evaded CPS and attempted to thwart R.H.'s removal. The DHHR also learned that R.H. III had an extensive criminal history in West Virginia and Virginia that included numerous convictions and pending charges of domestic assault, domestic battery, attempted malicious wounding, and child abuse resulting in injury. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in September of 2019, wherein petitioner stipulated to allowing D.O. and B.C. to be exposed to domestic violence. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period, which the circuit court granted. The case plan required petitioner to obtain and maintain employment and housing, participate in parenting and adult life skills classes, submit to drug screens, exercise visitations, participate in counseling and undergo a psychological evaluation. Most importantly, the family case plan required that petitioner and R.H. III not have contact. At a review hearing held in December of 2019, the circuit court continued petitioner's improvement period despite the DHHR's proffers that she and R.H. III denied the allegations of domestic abuse. The circuit court ordered petitioner and R.H. III to attend domestic violence counseling.

At a status hearing in March of 2020, the guardian reported that petitioner and R.H. III continued to have contact and were living together, which was in direct violation of their case plans. The guardian further expressed skepticism with petitioner and R.H. III's excuses that they suffered from scabies and pink eye, which prevented them from participating in the remaining terms of their improvement periods, such as supervised visitations. The guardian proffered that petitioner continued to work despite the alleged contagious diagnoses and that a DHHR worker observed her to be healthy with no skin rashes or bug bites. The circuit court noted that petitioner and R.H. III were permitted to appear by phone for the hearing due to this alleged excuse and ordered that they provide medical documentation of their diagnoses. The guardian also proffered that R.H. III tested positive for methamphetamine during a drug screen for his criminal proceeding a couple of weeks prior to the hearing.

---

[2]Bluefield sits on the border between West Virginia and Virginia. R.H. III lived in Bluefield, Virginia, while petitioner stayed in Bluefield, West Virginia, with D.O. and B.C.

Prior to the dispositional hearing, the guardian filed a report stating that, according to a service provider, petitioner had not been fully participating with services and had consistently missed scheduled supervised visitations for the prior month. The provider also stated that D.O. and B.C. exhibited negative behaviors after visiting with petitioner. The report further stated that petitioner was inconsistent with scheduling services, requested that R.H. III's bus pass be left with her despite the no contact order, and failed to provide medical documentation as previously ordered. The guardian also stated that in August of 2020, law enforcement found methamphetamine among petitioner's belongings during R.H. IIIs arrest. The guardian recommended terminating petitioner's parental rights based upon her failure to complete domestic violence counseling, maintain consistent visitation, stay away from R.H. III, and overall failure to make progress with her improvement period.

In September of 2020, the DHHR moved to terminate petitioner's and R.H. III's improvement periods, citing their lack of compliance. At the dispositional hearing the same month, the DHHR presented evidence that petitioner and R.H. III stopped staying in contact with their providers and the worker in January of 2020 and failed to comply with the terms of their respective improvement periods. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by its order entered on October 26, 2020. Petitioner appeals the dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5), such as termination of her custodial rights only. Petitioner relies on this Court's

---

[3]R.H. III's parental rights to R.H. were also terminated below. B.C.'s father voluntarily relinquished his parental rights. D.O.'s father's parental rights were terminated below. The permanency plan for the children is adoption by the same foster family.

holding that "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under [W. Va. Code § 49-4-604] will be employed." Syl. Pt. 1, in part, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). According to petitioner, she complied with some portions of the requirements of her improvement period, and D.O. and B.C. were old enough to have bonded with her. Petitioner contends that the termination of her custodial rights only would have been beneficial to the children. Finally, she argues that although the court is not required to "exhaust every speculative possibility of parental improvement," the foster family could have obtained legal guardianship of the children to allow her the ability to regain her custodial rights. *Id*.

We find that the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence shows that petitioner failed to follow through with a reasonable family case plan.While it is true that petitioner complied with some aspects of her case plan, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Most importantly, petitioner failed to address the leading allegation of abuse—that she exposed the children to domestic violence. Indeed, petitioner denied any issues of domestic violence to service providers, never completed domestic violence counseling, and continued to have contact with R.H. III against the court's orders. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Additionally, the record shows that petitioner failed to stay in touch with the DHHR workers and providers after January of 2020 and failed to provide medical documentation to support her medical excuses. Furthermore, methamphetamine was found in petitioner's belongings during R.H. III's arrest in August of 2020, and petitioner obtained employment in the same location as R.H. III. As such, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Given that this finding was based upon substantial evidence, petitioner's argument that the circuit court should have terminated her custodial rights only to allow her time to demonstrate that she could correct the conditions of abuse and neglect must fail. This is especially true in light of R.H.'s young age. As we have previously noted,

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257, 470 S.E.2d 205, 211 (1996). As petitioner cited above and in further support that young children deserve stability and certainty,

> "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Petitioner claims that she is bonded to the older children, D.O. and B.C. However, as the conditions of abuse and neglect still existed by disposition, the children remained in danger, and, therefore, we find no error in the circuit court's finding that termination of petitioner's parental rights was necessary for the children's welfare.

Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, petitioner was not entitled to a less-restrictive dispositional alternative, and, we find no error in the termination of her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 7, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6